UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION

**CIVIL ACTION NO. 1:05CV-171-M**

**THE TRAVELERS INDEMNITY COMPANY**
**OF CONNECTICUT**                                                                                          **PLAINTIFF**

**V.**

**BOWLING GREEN PROFESSIONAL ASSOCIATES, PLC**
**and EVANSTON INSURANCE COMPANY**                                              **DEFENDANTS**

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court upon cross-motions for summary judgment filed by Plaintiff, The Travelers Indemnity Company of Connecticut [DN 22], and Defendants, Bowling Green Professional Associates [DN 21] and Evanston Insurance Company [DN 19]. The Travelers Indemnity Company of Connecticut and Evanston Insurance Company seek a declaration by the Court that they have no duty to defend or provide coverage for Bowling Green Professional Associates in an underlying action in state court. Fully briefed, this matter is ripe for decision.

**I. STANDARD OF REVIEW**

In order to grant a motion for summary judgment, the Court must find that the pleadings, together with the depositions, interrogatories and affidavits, establish that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. The moving party bears the initial burden of specifying the basis for its motion and of identifying that portion of the record which demonstrates the

absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). Since the Parties do not dispute the material facts in this case, summary judgment is an appropriate means of resolving the legal issues underlying this dispute.

## II. BACKGROUND

Bowling Green Professional Associates (hereinafter "BGPA") is an out-patient opiate addiction treatment facility with an office in Hazard, Perry County, Kentucky. On November 13, 2004, at approximately 6:00 a.m., Jonas Wampler presented himself to BGPA as a patient for the administration of methadone. Shortly thereafter Wampler was driving a vehicle which collided with a vehicle driven by Stephanie Caudill. Both Caudill and Wampler were killed in the collision.

This declaratory judgment action arises out of an underlying wrongful death action currently pending against BGPA in Perry County Circuit Court styled Donna Holbrook, Administratrix of the Estate of Stephanie Renee Caudill v. Brande Wampler, Administratrix of the Estate of Jonas E. Wampler and Bowling Green Professional Associates, PLC. The Estate of Stephanie Caudill filed the civil action in state court against the Estate of Jonas E. Wampler and BGPA (hereinafter "Caudill Action"). The Estate of Jonas Wampler also asserted a third-party claim against BGPA and Dr. Syed Raza in the same civil action (hereinafter "Wampler Third-Party Claim").

### *Caudill Action*

On August 19, 2005, the Administratrix of the Estate of Stephanie Caudill filed a civil action in state court against the Estate of Jonas Wampler and BGPA. The administratrix of the Caudill estate (hereinafter "Caudill estate") alleges that on November 13, 2004, at approximately 6:00 a.m., Jonas Wampler "presented himself to [BGPA] . . . as a patient under the care of said Defendant." (Caudill Complaint at ¶ 5.) BGPA administered methadone to Wampler "when it knew or should have known that he had been and was using other mind-altering drugs at that same time." (Caudill Complaint at ¶ 6.) The complaint further alleges that

> [BGPA], their agents, servants or employees, allowed . . . Wampler[] to leave said Defendant's premises after treatment in an intoxicated state knowing he was going to immediately operate an automobile when said Defendant knew or should have known that . . . Wampler[] was a risk to himself and to others upon the highway, including . . . Stephanie Renee Caudill, by virtue of the drugs in his system, including the methadone administered by the Defendant, [BGPA].

(Id. at ¶ 7.) Shortly after Wampler left BGPA's premises, Caudill was operating her vehicle in the north-bound lane on Kentucky Highway 15 when Wampler "returning after treatment from . . . [BGPA] so carelessly and negligently drove said vehicle as to cause the vehicle to cross the center line into the north-bound lane and collide head-on with the motor vehicle being driven by . . . Caudill." (Id. at ¶ 8.) According to the Caudill complaint, "the treatment administered by the Defendant, [BGPA], to . . . Wampler [] immediately prior to the motor vehicle collision, was a substantial contributing factor leading to the collision that directly and proximately caused the death of Stephanie Renee Caudill." (Id. at ¶ 9.) Further, the

complaint charges that as a direct and proximate result of the negligence and carelessness of Wampler and BGPA, jointly and severally, Caudill was caused to suffer severe injuries which resulted in her death. (Id. at ¶ 10.)  Finally, the Caudill estate alleges that BGPA's "malicious and wrongful actions" were so egregious that they rose to the level of "gross negligence." (Id. at ¶ 12.)

### *Wampler Action*

In addition to the complaint filed by the Caudill estate, a third-party claim was asserted by the Wampler estate in the same civil action against BGPA and Dr. Syed Raza, an employee of BGPA who allegedly prescribed the dosage amounts of methadone. (Wampler Third-Party Complaint at ¶ 4.)  According to the Wampler estate, BGPA and its staff administered daily doses of methadone to Wampler for a period of approximately six months, beginning June 14, 2004, and ending on November 13, 2004.  Utilizing essentially the same claims and the same language as the Caudill complaint (Id. at ¶¶ 6, 7, 8, 10, 15), the Wampler estate asserts that the negligence and carelessness of BGPA and Dr. Raza caused Wampler to suffer injuries that resulted in his death.  An additional allegation found in the Wampler Third-Party Complaint is that Dr. Raza and BGPA "failed to meet the acceptable standard of care for physicians similarly situated as itself in the treatment" of Wampler.  (Id. at ¶ 11.)

### *Declaratory Judgment Action*

As a result of these state law claims, BGPA requested Travelers Indemnity Company (hereinafter "Travelers") and Evanston Insurance Company (hereinafter "Evanston") to

defend and indemnify BGPA against both the Caudill Action and the Wampler Third-Party Action under the terms of the Travelers Commercial General Liability Policy and Evanston Professional Liability Insurance Policy. On October 17, 2005, Travelers filed a Complaint in this Court for Declaratory Judgment seeking a judgment that Travelers has no duty to defend or provide coverage for Defendant, BGPA, in the state court action. In addition to the direct action brought by Travelers for a declaration of its rights under its policy of insurance, Evanston brought a cross-claim in the form of a claim for declaration of rights with respect to its professional liability policy of insurance issued to BGPA. The parties have filed cross-motions for summary judgment seeking a determination of whether coverage exists under the relevant polices for the claims asserted in state court action against BGPA.

### III. JURISDICTION

Initially, although neither party addresses this issue, the Court must decide whether it should exercise jurisdiction over this matter. See Nationwide Mutual Fire Ins. Co. v. Willenbrink, 924 F.2d 104, 105 (6th Cir. 1991). Exercise of jurisdiction under the Declaratory Judgment Act, 28 U.S.C. § 2201(a), is not mandatory.[1] Bituminous Casualty Corp. v. J & L Lumber Co., Inc., 373 F.3d 807, 812 (6th Cir. 2004) (citing Brillhart v. Excess

---

[1] "Declaratory judgment acts are procedural rules; therefore, in a diversity case, the Federal Declaratory Judgment Act applies." See Nationwide Mut. Fire Insurance Co. v. Creech, ___ F. Supp.2d ___, 2006 WL 1360810, *1 n.1 (E.D. Ky. 2006)(citing Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 671(1950)). Although Travelers cited to Kentucky's Declaratory Judgment Act, KRS § 418.040, in its complaint, this Court will consider Travelers's motion for declaratory judgment under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201. Id.

Ins. Co. of America, 316 U.S. 491, 494 (1942)).  The Sixth Circuit has "held in insurance coverage diversity cases that 'declaratory judgment actions seeking an advance opinion on indemnity issues are seldom helpful in resolving an ongoing action in another court.'" Bituminous, 373 F.3d at 812 (citing Manley, Bennett, McDonald & Co. v. St. Paul Fire & Marine Ins. Co., 791 F.2d 460, 463 (6th Cir. 1986)).  Further, the Sixth Circuit has emphasized that "such actions . . .should normally be filed, if at all, in the court that has jurisdiction over the litigation which gives rise to the indemnity problem.  Otherwise confusing problems of scheduling, orderly presentation of fact issues and *res judicata* are created."  Id.(citing Scottsdale Ins. Co. v. Roumph, 211 F.3d 964 (6th Cir. 2000); Omaha Property and Casualty Ins. Co. v. Johnson, 923 F.2d 446, 448 (6th Cir. 1991); Allstate Ins. Co. v. Mercier, 913 F.2d 273, 278-79 (6th Cir. 1990); Grand Trunk Western R. Co. v. Consolidated Rail Corp., 746 F.2d 323, 326 (6th Cir. 1984)).

However, the Sixth Circuit has emphasized that there is no per se rule against a district court's exercising jurisdiction in declaratory judgment actions involving insurance coverage questions.  Bituminous, 373 F.3d at 812-813.  Rather, it is necessary to examine five factors to determine whether a case is appropriate for a declaratory judgment.  Id. at 813.  In determining whether such exercise is appropriate, the Sixth Circuit instructs a district court to examine:

> (1) whether the judgment would settle the controversy;
> (2) whether the declaratory judgment action would serve a useful purpose in clarifying the legal relations at issue;
> (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata";

>   (4) whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction; and
>   (5) whether there is an alternative remedy that is better or more effective.

Id. (citing Scottsdale, 211 F.3d at 968 (citations omitted)).  Accordingly, the Court will consider each factor in turn.

Considering the first and second factors, while a declaratory judgment would not end the dispute between Caudill, Wampler, and BGPA, it would settle the controversy regarding the scope of the insurance coverage issued by both Travelers and Evanston and whether Travelers and Evanston has a duty to defend BGPA.  See Northland Insurance Co. v. Stewart Title Guaranty Co., 327 F.3d 448, 454 (6th Cir. 2003); TIG Insurance Co. v. Merryland Childcare and Development Center, Inc., 2005 WL 1923115 (W.D. Tenn. August 4, 2005); Travelers Home and Marine Insurance Co. v. State Farm Mutual Insurance Co., 2006 WL 1207617 (M.D. Tenn. May 1, 2006).  Thus, a prompt declaration of insurance coverage would serve to settle the legal relations at issue between Travelers, Evanston, and BGPA.  Therefore, the first two factors favor the exercise of jurisdiction.  As for the third factor, there is no evidence of a "race for res judicata" or improper motive in this action. As such, the Court finds this factor weighs in favor of exercising jurisdiction as well.

In determining the fourth factor – whether the exercise of federal jurisdiction would increase friction between federal and state courts, three additional factors are utilized:

>   (1) whether the underlying factual issues are important to an informed resolution of the case;
>   (2) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and
>   (3) whether there is a close nexus between the underlying factual and legal

7

> issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action.

Bituminous, 373 F.3d at 814-15 (citing Scottsdale, 211 F.3d at 968).

Travelers and Evanston are not a party to the state court action, and, based upon a review of the complaints, neither the scope of insurance coverage nor the obligation to defend is before the state court. See Northland, 327 F.3d at 454. The declaratory judgment action is based on Traveler's contention that the claims in the underlying state court actions fall under an exclusion in its policy. Likewise, Evanston argues that coverage for the claims in the Caudill Action are excluded under the specific terms of its policy. Therefore, these issues can be resolved without engaging in an extensive factual inquiry as to whether BGPA breached a duty to Caudill or Wampler. Id. at 454.

The Court finds that the state court is not in a significantly better position to evaluate the terms or exclusions in the insurance contracts. Because the Court will apply the law of Kentucky in determining the nature of the insurance coverage, "the Court sees no increased friction between this forum and the [Kentucky] state court." TIG Insurance Co., 2005 WL 1923115, *3. Furthermore, although this case is not likely to turn on federal common law or federal statutory law, there is no implication that it presents novel questions of unsettled state law. Bituminous, 373 F.3d at 815. Thus, the Court finds that the fourth factors weighs in favor of exercising jurisdiction.

Finally, the Court considers the alternative remedies available to Travelers and Evanston. Kentucky provides a declaration of rights procedure under KRS § 418.040.

Bituminous, 373 F.3d at 816. In addition, Travelers and Evanston could also file an indemnity action at the conclusion of the underlying state action. See id. While Travelers and Evanston do have alternative remedies, it is not clear that these are better or more effective remedies. Arguably, however, this factor weighs in favor of jurisdictional abstention.

Having considered the relevant factors, the Court concludes that the balance of the factors weighs in favor of exercising jurisdiction in this case.

## IV. DISCUSSION

### *A. Duty to Defend/Indemnify*

Under Kentucky law, an insurer has the duty to step in and defend a claim "if there is any allegation which potentially, possibly or might come within the coverage of the policy." James Graham Brown Foundation, Inc. v. St. Paul Fire & Marine Ins. Co., 814 S.W.2d 273, 279 (Ky. 1991) (citing O'Bannon v. Aetna Casualty & Surety Co., 678 S.W.2d 390 (Ky. 1984)). "The insurance company must defend any suit in which the language of the complaint would bring it within the policy coverage regardless of the merit of the action." Id. (citing Wolford v. Wolford, 662 S.W.2d 835 (Ky. 1984)). The determination of whether a duty to defend exists must be made at the inception of litigation. Brown Foundation, 814 S.W.2d at 279 (citing Knapp v. Chevron USA, Inc., 781 F.2d 1123 (5th Cir. 1986)).

The duty to pay a claim is separate and distinct from the duty to defend. Wolford, 662 S.W.2d at 838. Furthermore, the duty to defend is broader than the duty to indemnify.

9

While the terms of a policy may require an insurance carrier to defend a suit, that will not automatically result in an obligation to indemnify the insured. Id.

### B. *Evanston Insurance Policy*

In July of 2005, Evanston issued to BGPA a Professional Liability Insurance for Specified Medical Professions Policy for the policy period July 5, 2005 to July 5, 2006, retroactive to July 5, 2002. The indemnity agreement in the Evanston Policy provides as follows:

> **THE COVERAGE**
> **1. Professional Liability and Claims Made Clause:** To pay on behalf of the Insured all sums in excess of the deductible amount stated in the Declarations which the Insured shall become legally obligated to pay as damages as a result of CLAIMS FIRST MADE AGAINST THE INSURED DURING THE POLICY PERIOD for personal injury by reason of any negligent act, error or omission in professional services rendered or that should have been rendered subsequent to the retroactive date specified in the Declarations by any person for whose acts, errors or omissions the Insured is legally responsible, and arising out of the conduct of the Insured's profession as described in Item 3 of the Declarations provided that:
>
> > (a) the Insured had no knowledge of any claim or suit, or any act, error or omission, which might reasonably be expected to result in a claim or suit as of the date of signing the application for this insurance;
> >
> > (b) there are no other certificate or policies of insurance pursuant to which the Insured is afforded any coverage for such claim or suit.

(Evanston Policy at E-22(emphasis in original.) The Evanston Policy also provides that Evanston will defend BGPA against claims to which the policy applies. (Id. at E-23). The Evanston Policy defines "personal injury" as "any physical or mental injury to or death of any patient . . . ."

10

(Id. at E-22).

The Evanston Policy also includes a list of Exclusions which provides in relevant part that

> **This policy does not apply**
>
> . . .
>
> (f) to punitive or exemplary damages, fines or penalties, except, that if a suit shall have been brought against the insured for a claim falling within the coverage hereof, seeking both compensatory and punitive or exemplary damages, fines or penalties, then the Company will afford a defense to such action, without liability, however, for such punitive or exemplary damages, fines or penalties; . . . .

(Id. at E-24.)

Evanston argues that it is entitled to a judgment declaring that it has no obligation under the terms of the Evanston Policy to defend or indemnify BGPA against the claims asserted in the Caudill Action. Evanston argues that the policy covers claims for "personal injury" which is specifically defined to mean "injury to or death of **any patient.**" (Evanston Policy at E-22(emphasis added).) BGPA has stipulated that Caudill "was not a patient of Bowling Green Professional Associates." (Joint Report ¶ 5.) Accordingly, Evanston argues that summary judgment should be granted given that the allegations in the Caudill complaint are not covered by the Evanston Policy.

In response to this argument, BGPA argues that under the doctrine of reasonable expectations, BGPA is entitled to reasonably expect that Evanston would defend and indemnify against any professional negligence claim. According to BGPA, because Caudill's complaint asserts claims for professional negligence – the negligent administration

of methadone, BGPA's professional negligence policy should provide coverage.

Under Kentucky law, insurance contracts are to be liberally construed in favor of the insured. St. Paul Fire & Marine Ins. Co. v. Powell-Walton-Milward, Inc., 870 S.W.2d 223, 227 (Ky. 1994). However, "[t]he words employed in insurance policies, if clear and unambiguous, should be given their plain and ordinary meaning." Nationwide Mutual Ins. Co. v. Nolan, 10 S.W.3d 129, 131 (Ky. 1999) (citations omitted). The Court must attempt to determine the intent and understanding of the parties by examining the language of the contract alone. Id. at 131-32. "A court may not read into any insurance policy terms and conditions which it does not contain." Hendrix v. Fireman's Fund Insurance Co., 823 S.W.2d 937, 941 (Ky. App. 1991). Under the doctrine of reasonable expectations, "an insured is entitled to all the coverage he may reasonably expect to be provided according to the terms of the policy." Id. at 938 (Ky. App. 1991); Brown v. Indiana Insurance Co., 184 S.W.3d 528, 540 (Ky. 2005). "Only an unequivocally conspicuous, plain and clear manifestation of the company's intent to exclude coverage will defeat that expectation." Simon v. Cont'l Insurance Co., 724 S.W.2d 210, 212 (Ky. 1986)).

The Court finds that there is no ambiguity in the Evanston Policy. The contract clearly provides that coverage extends only to the injury to or death of any BGPA patient. This language is "unequivocally conspicuous, plain and clear." Id. It is also clear from the Caudill complaint and stipulation by BGPA that Caudill was not a patient of BGPA. Under the terms of the policy, Evanston has no duty to defend BGPA against the Caudill Action because the policy in question applies only to claims involving the death or injury of a

patient of BGPA. James Graham Brown Foundation, Inc., 814 S.W.2d at 279. Furthermore, BGPA could not have reasonably expected coverage under the terms of the Evanston policy for claims arising out of the death of a person who was not a patient of BGPA when the policy clearly limits coverage to claims for "injury to or death of any patient." (Evanston Policy at E-22.) Therefore, the Court finds that Evanston owes no duty to defend or indemnify BGPA in the Caudill Action and therefore, summary judgment in favor of Evanston on this issue is granted.

With respect to the claims asserted in the Wampler Action, Evanston and BGPA agree that Evanston has a duty to defend and indemnify BGPA and Dr. Raza against the third-party complaint by Wampler. Evanston and BGPA disagree on only one issue – whether Evanston has a duty to indemnify BGPA or Dr. Raza against an award of punitive damages.[2] Clearly, the policy in question expressly excludes coverage for punitive damages. See Evanston Policy at E-24 (The policy "does not apply . . . to punitive or exemplary damages, fines or penalties . . . .")). See also Deerfield Insurance Co. v. Warrent County Fiscal Court, 88 S.W.3d 867, 875 (Ky. App. 2002). Therefore, the Court grants summary judgment in favor of Evanston on this issue as well.

### C. Travelers Insurance Policy

In June of 2004, Travelers issued to BGPA a Commercial General Liability Coverage Policy for the policy period from July 5, 2004 to July 5, 2005. The first section of the

---

[2]Both Evanston and BGPA agree that it will provide a defense for the punitive damage claim pursuant to the terms of the policy. (Evanston Policy at E-24.)

13

Travelers Policy entitled "COVERAGES," includes the following language:

> **Section 1 – COVERAGES**
> **COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
> **1.    Insuring Agreement**
>     a.    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. . . .
>
>     b.    This insurance applies to "bodily injury" and "property damage" only if:
>         (1)    The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory" . . . .

(Commercial General Liability Policy at 1.)  The Travelers Policy defines bodily injury as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time."  (Id. at 12.)  Coverage territory is defined as the United States of America.  (Id.)  And, occurrence is defined as an accident . (Id. at 14.)

The Travelers Policy also contains an exclusion for Health or Cosmetic Services that provides in relevant part:

> This insurance does not apply to "bodily injury" or "property damage" . . . arising out of:
>
> 1.    The rendering or failure to render:
>     a.    Medical, surgical, dental, x-ray or nursing service or treatment, advice or instruction, or the related furnishing of food or beverages;
>     b.    Any health or therapeutic service, treatment, advice or instruction;
>
> . . .
>
> 3.    The furnishing or dispensing of drugs or medical, dental or surgical supplies or appliances . . . .

(Id. at Endorsement MP T1 31 11 03, Exclusion – Health or Cosmetic Services.)

Travelers argues that it is entitled to judgment as a matter of law because the claims in the underlying suit fall under the Health or Cosmetic Services Exclusion. Travelers characterizes the allegations in both the Caudill and Wampler complaints as claims for injuries resulting from medical treatment and dispensing of drugs. As a result, Travelers contends that paragraph 1 and paragraph 3 of the Health or Cosmetic Exclusion apply. Travelers identifies the following allegations within the Caudill complaint that it argues fall clearly within the Health or Cosmetic Exclusion:

> Wampler "received treatment." (Caudill Complaint at ¶ 3.) Wampler presented himself to BGPA, "[a]s a patient under the care of said defendant . . ." (Id. at ¶5.) BGPA, "administered methadone to . . . Wampler, when it knew or should have known he had been and was using other mind altering drugs at the same time." (Id. at ¶ 6.) BGPA allowed Wampler, "to leave said defendant's premises after treatment in an intoxicated state knowing he was going to immediately operate an automobile when [BGPA] knew or should have known that . . . Wampler . . . was at risk to himself and to others upon the highway . . . by virtue of the drugs in his system, including the methadone administered by . . . [BGPA]." (Id. at ¶ 7.) "The treatment administered by . . . [BGPA] to Wampler was a substantial contributing factor leading to the collision . . . ." (Id. at ¶ 9.)

Travelers maintains that a person who presents himself to a medical facility for treatment is seeking the professional services of a doctor or nurse. Travelers contends that allowing Wampler to leave after treating him with Methadone is intertwined with BGPA's medical treatment of Wampler. According to Travelers, a doctor does not use his professional expertise to decide a patient needs Methadone without considering all the risks of administering the drug including the fact that the patient will leave following treatment.

In support of its argument, Travelers cites <u>Ratliff v. Employers' Liability Assurance Corp.</u>, 515 S.W.2d 225 (Ky. 1974). In <u>Ratliff</u>, a patient brought an action against the general liability insurer of a hospital to recover judgment for personal injuries due to a fall. The defendant's insured was a hospital specializing in psychiatry and the treatment of mental patients and alcoholics. The plaintiff had admitted himself to the hospital in a physically weakened condition suffering from severe alcoholism. 515 S.W.2d at 227. After receiving some medicine from a nurse at the nurses' station, the plaintiff attempted to walk back to his room unassisted during which he fell and broke his leg. The plaintiff sought to recover for the hospital's failure to exercise ordinary care for the plaintiff's safety at the time of the injury. <u>Id.</u> The insurer defended on the ground that the accident was not covered by the policy by reason of the Malpractice and Professional Services exclusion.[3] Kentucky's highest court held that the exclusion applied finding that

> the negligence of the . . . Hospital is based upon the failure of the nurses to recognize [plaintiff's] debilitated condition as a result of acute alcoholism and the administration of drugs by the hospital. Determining whether [plaintiff] was capable of returning safely from the nurses' station to his bed required the nurses to exercise their expert professional ability. Any negligence on the part of the hospital in deciding that [plaintiff] could return to bed unassisted was clearly a failure to render professional care.

<u>Id.</u> at 230. Given this holding in <u>Ratliff</u>, Travelers argues that the administration of

---

[3] The exclusion in the insurance policy in <u>Ratliff</u> stated that "the policy does not apply to injury, sickness, disease, death or destruction due to . . . 1. The rendering of or failure to render (a) medical, surgical, dental, x-ray or nursing service or treatment, or the furnishing of food or beverages in connection therewith; (b) any service or treatment conducive to health or of a professional nature; or 2. The furnishing or dispensing of drugs or medical, dental, or surgical supplies or appliances; . . . ." <u>Ratliff</u>, 515 S.W.2d at 226.

16

Methadone and the ability to know whether Wampler posed a risk to himself or others due to the Methadone and/or other drugs in his system would involve the "exercise of professional duty" by the doctor and/or nurse who treated Wampler, thereby triggering the Health or Cosmetic Service Exclusion.

In contrast, BGPA argues that Travelers has a duty to defend BGPA because both the Caudill and Wampler complaints make allegations beyond professional negligence. According to BGPA, both complaints allege both medical and non-medical claims. The medical claims center around BGPA providing medical treatment and drugs to Wampler. The non-medical claims involve BGPA's decision to allow Wampler to leave its facility in an intoxicated state after receiving treatment. According to BGPA, allowing Wampler to leave is not rendering or failing to render medical or nursing services or treatment under the terms of the exclusion in question. Likewise, allowing Wampler to leave is not furnishing or discharging drugs. As a result, BGPA maintains that the Health or Cosmetic Service Exclusion relied upon by Travelers does not apply to the non-medical allegations contained in the state court action, and therefore, Travelers has a duty to defend these claims.

Additionally, BGPA argues that <u>Ratliff</u> is distinguishable from the present case. According to BGPA, the plaintiff in <u>Ratliff</u> was an in-patient who had been admitted to the hospital. In contrast, Wampler presented himself to BGPA to receive medication, and his treatment had concluded before he left the premises. BGPA also submits that the exclusion contained in the Travelers Policy merely excludes coverage for "medical" service, treatment, or advice where the exclusion in <u>Ratliff</u> included "professional services."

Considering the parties' arguments, the Court finds that the Health or Cosmetic Services Exclusion contained in the Travelers Policy applies to the claims brought against BGPA in the underlying state court action. The Travelers Policy broadly excludes coverage for all bodily injuries that are causally connected or related[4] to the "rendering or failure to render" medical, nursing, or health "services or treatment, advice or instruction" or the furnishing or dispensing of drugs. (Health or Cosmetic Services Exclusion, MP T1 31 11 03). The allegations in the underlying suit seek damages for bodily injury alleged to have arisen out of medical services, including the administering of drugs, to Wampler. Clearly, providing medical services or advice, including administering drugs, requires the exercise of trained medical judgment. The alleged negligent act of permitting Wampler to leave the facility after treatment was not independent and mutually exclusive of the administration of the methadone, but instead was related to BGPA's medical treatment of Wampler. Therefore, the Court finds that any negligence on the part of BGPA in determining that Wampler was capable of leaving the premises unassisted required the staff to exercise an expert medical judgment. See Ratliff, 515 S.W.2d 225. In other words, any bodily injury that allegedly occurred because of the methadone treatment, including the determination that Wampler was capable of leaving the facility unassisted after treatment, arises out of the

---

[4] "The phrase 'arising out of' is frequently given a broader meaning than proximate cause. The phrase is considered to mean 'flowing from' or 'having its origin in,' indicating that there only need be 'a' causal connection, rather than a proximate causal connection." West American Insurance Co. v. Embry, 2005 WL 1026185 (W.D. Ky. April 25, 2005)(quoting 7 Couch on Insurance 3d § 101:54 (1997)). See also Eyler v. Nationwide Mutual Fire Insurance Co., 824 S.W.2d 855 (Ky. 1992)(defining "arising out of" to mean "causally related").

18

rendering or failure to render medical, nursing or health "services or treatment, instruction or advice," including the furnishing of drugs.  Consequently, the Court finds that Travelers has no duty to defend or indemnify any claims asserted against BGPA in the Caudill or Wampler Actions; and summary judgment is granted in favor of Travelers.

## V.  CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that the motions by Travelers Indemnity Company [DN 22] and Evanston Insurance Company [DN 19] for summary judgment is **granted** and the motion by Bowling Green Professional Associates for summary judgment [DN 21] is **denied**.

cc: counsel of record